# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 14
In the Matter of Madison County
Industrial Development Agency
et al.,
      Appellants,
    v.
State of New York Authorities
Budget Office et al.,
      Respondents.

Charles W. Malcomb, for appellants.
Robert M. Goldfarb, for respondents.

DiFIORE, Chief Judge:

Under the Public Authorities Accountability Act (PAAA), every "local authority,"

as that term is defined in Public Authorities Law § 2 (2), is obligated to file certain annual,

budget and independent audit reports with respondent New York State Authorities Budget

- 1 -

Office (ABO).  The narrow question before this Court is whether the ABO's determination denying the request of petitioners Madison County Industrial Development Agency (MCIDA) and Madison Grant Facilitation Corporation (MGFC) to file consolidated reports was irrational, arbitrary and capricious or contrary to law.  Because it was not, we affirm the Appellate Division order.

MCIDA is an "industrial development agency" (IDA) created under Public Authorities Law article 18-A to spur industrial and economic development in Madison County. Under the Public Authorities Law, an IDA is a "local authority" subject to the reporting requirements of the PAAA (Public Authorities Law § 2 [2] [c]).  In 2013, MCIDA incorporated MGFC as a "not-for-profit local development corporation" under Not-For-Profit Corporation Law § 1411.  According to MCIDA, its intent was to shield itself from potential liability in the event a third-party contractor failed to comply with contractual conditions imposed upon acceptance of economic development grant funds.  MCIDA is the sole member of MGFC. In its Certificate of Incorporation, MGFC acknowledged that it is "subject to the [PAAA]" and, as such, is required to undergo annual independent audits, prepare annual budgets, and file required reports with the ABO.

Soon after it was created, the ABO informed MGFC that it must comply with the reporting requirements of the PAAA as a corporation "legally affiliated with" MCIDA, an industrial development agency. Without asserting a legal basis for exemption from separate filing requirements, MCIDA asked that the ABO treat MGFC as its "subsidiary" and allow the two entities to file consolidated reports.  In response, the ABO expressed concern that consolidated reporting "will result in a loss of transparency and accountability" and

questioned "whether IDAs can form subsidiary corporations," stating it would seek guidance on this issue from the Attorney General. In March 2015, MCIDA advised the ABO that it had filed consolidated reports with MGFC, indicating that the grant project prompting creation of MGFC had stalled and that MGFC had no activities or budget to report. In this communication, MCIDA referenced a statement posted in the "FAQ" section of the ABO's website which, at that time, indicated that consolidated reporting was permissible for certain subsidiaries of public authorities meeting specified criteria.

In the meantime, in September 2014, the Attorney General issued Formal Opinion No. 2014-F1 concluding that an IDA is not authorized to create a subsidiary because that power is not expressly granted in the relevant enabling legislation and, in the Attorney General's view, could not be implied. Referencing that Formal Opinion, the ABO issued the letter determination at issue here, stating it had "concerns about the legal status" of MGFC, and could not "treat [MGFC] as a subsidiary," noting it was required to report under the Public Authorities Law – an obligation acknowledged in its Certificate of Incorporation. Thus, the ABO denied MCIDA's request to file consolidated reports, effectively requiring separate filing by MGFC.

Petitioners MCIDA and MGFC commenced this CPLR article 78 proceeding challenging the ABO's determination. Supreme Court dismissed the petition, agreeing with the reasoning in the Attorney General's Formal Opinion that MCIDA had no express or implied authority to create a subsidiary. The Appellate Division affirmed on similar grounds (151 AD3d 1532 [2017]). We granted leave to appeal (30 NY3d 913 [2018]).

In this CPLR article 78 proceeding, where no administrative hearing was required, judicial review is limited to whether the determination was irrational, arbitrary and capricious or contrary to law (CPLR 7803 [3]; see Matter of Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528 [2018]). Administrative action is irrational or arbitrary and capricious if "it is taken without sound basis in reason or regard to the facts" (Matter of Wooley v New York State Dept. of Correctional Servs., 15 NY3d 275, 280 [2010] [internal quotation marks and citation omitted]). If a determination is rational it must be sustained even if the court concludes that another result would also have been rational (id.).

In this case, although the parties dispute the merits of the Attorney General's Formal Opinion, the issue distills to whether the ABO's record-keeping determination was irrational, arbitrary and capricious or contrary to law and our analysis therefore begins with an examination of the legislative source of that determination. The PAAA (see Public Authorities Law §§ 2800 – 2806), adopted in 2005, mandates that "[e]very" state and local authority shall submit to the ABO and others in state and local government detailed annual, budget, independent audit and other reports, and requires "each" state and local authority to make such information accessible to the public (Public Authorities Law §§ 6 [3]; 2800 [1] [a], [b]; 2800 [2] [a], [b] [annual]; 2801 [1], [2] [budget]; 2802 [1], [2] [independent audit]). Its purpose was "to ensure openness and accountability" of all public authorities and to "promote public confidence in the financial and operating integrity of these institutions" by expanding the information required to be disclosed to the government and public (Budget Report on Bills at 1-2, Bill Jacket, L 2005, ch 766).

The ABO was initially created to "oversee and analyze the activities and financial practices" of public authorities, and "review and report on" their compliance "with accepted standards of corporate governance, accountability and financial disclosure" (Budget Report on Bills at 1-2, Bill Jacket, L 2005, ch 766).  However, despite the PAAA's intent to enhance transparency by strengthening reporting requirements, the Legislature soon concluded that greater oversight and additional reforms were needed.  Thus, in 2009, the Authority Reform Act was passed, expanding the powers and resources of the ABO to enable it to better "police" state and local public authorities (Brodsky Letter, Bill Jacket, L 2009, ch 505; see also Legislative Findings, Bill Jacket, L 2009, ch 506).  The Authority Reform Act removed the ABO from the umbrella of the Division of Budget, reestablished it as an independent entity and enhanced its powers (see Mem in Support, Bill Jacket, L 2009, ch 506).

These enhanced powers are detailed in Public Authorities Law § 6, which requires, among other things, that the ABO "conduct reviews and analysis of the operations, practices and reports of state and local authorities to assess compliance" with the PAAA and other laws, "maintain a comprehensive inventory" of public authorities and assist state and local authorities in improving management practices and procedures for public disclosure of financial information (Public Authorities Law § 6 [1] [a – o]).  Particularly relevant to this dispute, the ABO was given broad authority to "request and receive from any state or local authority . . . such . . . information, books, records, other documentation and cooperation as may be necessary to perform its duties" (Public Authorities Law § 6 [2]

[a]).[1]  Under this fortified scheme, the ABO has a full range of enforcement powers to "act upon complaints" regarding any authority, "initiate formal investigations," "issue subpoenas" and "publicly warn and censure authorities for non-compliance" with regulatory requirements (Public Authorities Law § 6 [2] [a – j]).

Despite the broad oversight authority granted the ABO, the determination challenged here was quite limited – all that the ABO required was that MGFC file separate reports.  Referencing the Attorney General's Formal Opinion concluding that IDAs cannot form subsidiaries, the ABO noted only that it had "concerns" about the legal status of MGFC and thus would not "treat" MGFC as a subsidiary.  Notably, the ABO did not expressly determine that MCIDA "lacked authority" to create a subsidiary or that MCIDA had engaged in any "ultra vires" act, nor did it issue any other final determination relating to MCIDA or MGFC.

The ABO's narrow record-keeping determination was not contrary to law. The Public Authorities Law plainly provides that a local development corporation such as MGFC, which is "affiliated" with a local IDA, is also a local authority subject to the PAAA and, as such, has reporting obligations (Public Authorities Law § 2 [2] [d]).  Regardless of whether MGFC is also a subsidiary, it is clearly an "affiliate" of MCIDA within the

---

[1] The ABO also has the discretion to waive any of the annual filing and public disclosure requirements upon a showing that the authority meets certain regulatory criteria, and after consideration of "such other factors as the [ABO] deems to reflect the relevance of the required disclosures to evaluation of an authority's effective operation, and the burden such disclosures place on an authority" (Public Authorities Law § 2800 [4]).  Petitioners did not request a waiver from the ABO and do not rely on this provision in their arguments before this Court.

meaning of the statute.[2]  The PAAA does not contain a reporting exception for subsidiaries of local authorities, and petitioners have not identified any other statute or regulation that excused MGFC from its obligation to separately report.

Moreover, under the circumstances presented here, the decision was neither irrational nor arbitrary and capricious.  Petitioners relied on the response to a FAQ that appeared on the ABO's website regarding the agency policy permitting some subsidiaries of public authorities to file consolidated reports with the parent authority.[3]  However, as the ABO asserts without contradiction, the agency has never permitted a purported subsidiary of a local IDA to file consolidated reports and, thus, no claim of inconsistent or discriminatory enforcement is advanced here.  The decision not to extend this policy to MGFC has not been shown to have been an abuse of the agency's discretionary authority, which includes the power to require a local authority to supply whatever records the ABO

---

[2]  Under Public Authorities Law § 2 (4), "'affiliate' or 'affiliated with' shall mean a corporate body having substantially the same ownership or control as another corporate body" (see L 2005, ch 766 § 2, as amended by L 2009, ch 505, such amendment repealed by L 2009, ch 506, § 29).

[3] Subsidiaries are not referenced in the definition of a "local authority" (see Public Authorities Law § 2 [2]).  Subsidiaries of a state public authority or public benefit corporation are expressly included within the definition of a "state authority" (see Public Authorities Law § 2 [1]) and, thus, are generally required to comply with the filing requirements of the PAAA.  However, for these purposes, the term "subsidiary" does not include "corporations that have been certified by the parent corporation to the [ABO] as being inactive for the past twelve months, having an identical board of its parent corporation, or not having separate and independent operational control" (Public Authorities Law § 2 [5]). Thus, some subsidiaries of some state authorities are effectively excluded from separate filing requirements under the statutory scheme.  There is no provision similarly excluding subsidiaries of local authorities.  To the contrary, to the extent such a subsidiary has "substantially the same ownership or control as another" local authority, it is an "affiliate" that is expressly subject to statutory reporting requirements under Public Authorities Law § 2 (2) (d).

deems necessary to perform its duties (see Public Authorities Law § 6 [2] [a]). Notwithstanding its decision to excuse some subsidiaries of public authorities from the separate reporting mandate, the ABO was not compelled to exercise that discretion here, particularly given its uncertainty over the status of MGFC.  It was not irrational for the ABO to decline to "treat" MGFC as a subsidiary of MCIDA for the limited reporting purpose.  Such action was consistent with the plain language of the PAAA and the ABO's mandate to ensure transparency by compelling reporting compliance by public authorities, including affiliates of IDAs such as MGFC.

Thus, petitioners have failed to establish their entitlement to relief under CPLR article 78.  Finally, even if MCIDA was authorized to create a subsidiary as it asserts, this would not require invalidation of the ABO determination for the reasons we have explained -- making it unnecessary for us to reach that argument.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed, with costs.  Opinion by Chief Judge DiFiore.  Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided March 21, 2019